AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Foxx Development Cellular Phone
Seizure No. 2026250600029701-0003
("Target Device 2")

Case No. 26-mj-00462

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-2, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Ramon Galindo, HSI Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: 01/29/2026

*Judge's signature*

City and state: San Diego, California         HON. BRIAN J. WHITE, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The following property is to be searched:

Foxx Development Cellular Phone

Seizure No. 2026250600029701-0003

**("Target Device 2")**

**Target Device 2** is currently in the possession of Homeland Security Investigations, located at 880 Front Street, Suite 3200, San Diego, California 92101.

## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachments A-1 and A-2, includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 23, 2025, up to and including January 27, 2026:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above; which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

# AFFIDAVIT

I, Ramon Galindo, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s), (Collectively, the "**Target Devices**"):

> Black Samsung Cellular phone
> Seizure No. 2026250600029701-0003
> ("**Target Device 1**")
>
> Foxx Development Cellular Phone
> Seizure No. 2026250600029701-0003
> ("**Target Device 2**")

as further described in Attachments A-1 and A-2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Fernando Martin COTA Sordia ("COTA") and other co-conspirators, known and unknown, for importing approximately 451.02 kilograms (994.32 pounds) of methamphetamine from Mexico into the United States. The **Target Devices** are currently in the custody of Homeland Security Investigations and located at 880 Front Street, Suite 3200, San Diego, California 92101.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

# BACKGROUND

3. I have been employed by U.S. Customs and Border Protection since 2003 and am currently assigned to Homeland Security Investigations (HSI) at the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California as a Task Force Officer from CBP. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry, the Otay Mesa Port of Entry, and Tecate Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within

the United States.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7. On January 27, 2026, at approximately 9:40 AM, Fernando Martin COTA Sordia, ("COTA"), a citizen of Mexico and border crosser, applied for entry into the United States from Mexico through the Otay Mesa Port of Entry Commercial Facility through vehicle primary lanes, lane 2. COTA was the driver and sole occupant of a 2018 Kenworth Tractor ("the vehicle") bearing California license plates.

8. Upon inspection before a Customs and Border Protection ("CBP") Officer, COTA presented his DSP-150 border crossing card as his admission document. The CBP Officer received an alert and referred COTA and the vehicle to the X-ray machine and the intensive dock for further inspection.

9. A CBP Officer assigned to the intensive dock inspected the tractor. The CBP Officer noticed the passenger side fuel tank was excessively high and the fuel appeared cloudy. The CBP Officer probed the fuel tank and noticed that the fuel appeared to have a gritty texture. A CBP Supervisor assisted in testing the diesel.

10. Further inspection of the vehicle resulted in the discovery of liquid methamphetamine inside the passenger side fuel tank of the vehicle, with a total of 31 buckets with an approximate weight of 451.02 kgs (994.32 lbs.). A sample of the substance field tested positive for the characteristics of methamphetamine.

11. COTA was placed under arrest at approximately 12:20 PM.

12. At approximately 1:17 PM, During a post-Miranda interview, COTA denied knowledge that the narcotics were in the vehicle. COTA stated that he is a driver and has been employed with his current company for approximately 4 months. COTA stated that yesterday he was given instructions to bring the tractor into the United States today and pick up a trailer at a parking lot in San Diego. COTA stated the tractor was turned over to him today at a gas station in Tijuana by a company employee instead of the lot in Tijuana where he usually leaves the company tractors. COTA stated while at the gas station the company employee who was accompanied by an unknown person, was fueling one of the

tanks of the tractor. COTA stated he saw the other tank, and the other tank looked full because he saw a green and blue liquid in it. COTA gave consent to search his cell phone. While searching his cell phone, videos were found on his phone, including at least one video dated January 6, 2026.

13. COTA was reread his Miranda rights a second time and again waived those rights. Agents presented COTA with a video, dated January 6, found on his cellular phone, which depicted individuals siphoning gas from a trailer. When asked by agents what was happening in the video and why they were doing that, COTA responded with comments such as, "The right tank is being cleaned out," and "Life speaks for itself." COTA further stated to agents that he was not threatened and asked what the prison time would be for this offense.

14. COTA was charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

15. The **Target Devices** were found and seized by a Customs and Border Protection Officer (CBPO) who was tasked to perform a secondary inspection of the Vehicle and inventory all the property seized from the Defendant and his/her Vehicle, of which the Defendant was the sole occupant. The **Target Devices** were found in the driver-side overhead bin of the cab. When questioned, the driver denied ownership of **Target Device 1** and **Target Device 2**. However, based on my training and experience, individuals involved in drug smuggling often use mobile phones to communicate with co-conspirators, coordinate smuggling activities, and maintain records related to their criminal enterprise. It is also common for smugglers to possess or have access to multiple phones, including those used by associates or co-conspirators, and to deny ownership of devices to distance themselves from evidence. Furthermore, I know based on my training and experience that it is highly likely that other co-conspirators were involved with the drug importation event, especially in light of the Defendant's assertion that he picked up the tractor from a company employee at an atypical location in Mexico – a gas station instead of the company's lot.

16. Given the location of **Target Device 1** and **Target Device 2** within the

driver's immediate control, combined with the discovery of narcotics in the vehicle, there is probable cause to believe these devices may contain evidence of drug smuggling, including communications with co-conspirators, logistical details, and records of the smuggling operation. Therefore, a search of **Target Device 1** and **Target Device 2** is necessary to further the investigation and identify all individuals involved in the smuggling activity.

17. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant or other co-conspirators were using the **Target Devices** to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics.

18. Based upon my training and experience, it is also not unusual for individuals, including the Defendant or other narcotics traffickers, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. I located a saved video on the Defendant's cellular phone showing liquid being siphoned from a tractor trailer on January 6, 2026, and after showing the Defendant that video, he responded by asking, among other things, how much prison time one might receive for this offense. Accordingly, I request permission to search the **Target Devices** for data beginning on December 23, 2025 (two weeks prior to January 6, 2026), up to and including January 27, 2026.

## METHODOLOGY

19. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the

identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

22. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

### CONCLUSION

23. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Devices** will yield evidence of the Defendant's and other co-conspirators' violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachments A-1 and A-2, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Task Force Officer Ramon Galindo
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 28th day of January, 2026.

Honorable BRIAN J. WHITE
United States Magistrate Judge